# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

—o0o—

| | |
|---|---|
| HENRY SANDOVAL, ) | 1:05-CV-00174 AWI JMD (HC) |
| ) | |
| Petitioner, ) | FINDINGS AND RECOMMENDATION |
| ) | REGARDING PETITION FOR WRIT OF |
| v. ) | HABEAS CORPUS |
| ) | |
| ) | |
| ROSEANNE CAMPBEL et al., ) | [Doc #1] |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Merced, Case No. 24700.

Petitioner was convicted of two counts of lewd or lascivious acts upon a child under the age of fourteen years, Cal. Penal Code § 288(a), with three "strike" priors for purposes of California's

1

1  "three strikes" law, Cal. Penal Code §§ 667(b)-(I), 1170.12.  Petitioner was sentenced pursuant to
2  California's three strikes law to two consecutive terms of twenty-five years to life in state prison.
3         Petitioner timely appealed to the California Court of Appeal, Fifth Appellate District
4  (hereinafter "Fifth DCA").  On July 15, 2004, the Fifth DCA affirmed Petitioner's convictions and
5  sentenced.
6         Following the decision of the Fifth DCA, Petitioner timely petitioned the California Supreme
7  Court for review.  Review was denied on September 22, 2004, without prejudice to any relief to
8  which Petitioner might be entitled after the California Supreme Court determined the effect on
9  California law of Blakely v. Washington, 542 U.S. 296 (2004).
10        On January 18, 2005, Petitioner filed the instant petition, alleging three grounds for relief:
11  denial of the effective assistance of counsel (claim one); jury instructions on uncharged sexual
12  offenses in violation of his right to a fair trial (claim two); and imposition of consecutive sentences in
13  violation of his right to a jury trial (claim three).
14        Respondent filed an answer to the petition, and on May 03, 2007, Petitioner filed a Traverse
15  to Petitioner's Answer.

## FACTUAL BACKGROUND

The Court adopts the facts as recited by the Fifth DCA in its opinion dated July 15, 2004:

> Y is Petitioner's daughter.  Petitioner lived with Y off and on over the years.
> In October of 1999, Y was married to Robert.  There were four children living in
> their household.  Ten-year-old L and seven-year-old A were Y's daughters.  Seven-
> year-old K was Robert's daughter and two-year-old C was Y and Robert's son.
> Defendant had not been in Y's home since March of 1999.
>     Y was sitting at the kitchen table.  L came in the room and asked Y, her
> mother, what she would do if someone had improperly touched L.  Y told L that she
> would call the police and asked L why she asked the question.  She told L not to lie
> to her or she would be in deep trouble.  L told Y that Petitioner had touched her in a
> bad way when she was five or six years old.
>     L described to Y what had happened.  L was on her bed in her room when
> she asked defendant where babies came from.  Defendant answered by taking his
> penis out of his boxer shorts.  L averted her eyes and ran out of the room.  Petitioner
> grabbed L and placed her on the bed.  Defendant put his hand up under L's shirt and
> then ran his hand down across her vaginal area.  L got up and left.  Later that day,
> defendant asked L for a French kiss.  L did not know what that was, so defendant
> demonstrated by kissing her.  L left.  Defendant told L if she said anything he would
> blame the incident on her.  Later that day, defendant was tickling L and bit her.  Y
> observed the bite mark and told defendant not to do that anymore.
>     After L told Y what happened, Y called K and A into the kitchen.  L was
> crying.  Y asked K and A if defendant had touched them in any way.  K said that

defendant had touched her in a bad way.  Y and the family had gone to a theme park in June of 1998.  K did not get to go because she had lied to Y about completing her homework.  K was left at home with Petitioner.

K was taking a nap when Petitioner came in and got on the bed.  He rubbed her private part.  K was scared and got out of bed.  Defendant told her not to tell anyone.  She did not tell anyone what happened.

A then said that defendant had touched her in a bad way the night she was sent to her room early while the rest of the family was singing karaoke.  In March of 1999, A had been sent to her room and defendant came in the room to read her a book.  A started to fall asleep and defendant got in bed beside her.  Defendant ran his hand down her body and rubbed her "down there."  He told her not to tell anyone; she did not.

Y called the police.  Officers came out and interviewed each girl with Y present.  Within a few days, Y took the girls to counseling with Elizabeth Scott, a licensed family and marriage therapist.  Scott testified about her sessions with the girls.

Psychologist Anthony Urquiza testified regarding child abuse accommodation syndrome.  He testified that there are five phases of the syndrome – secrecy, helplessness, entrapment or accommodation, unconvincing or delayed disclosure, and retraction.  Victims in a close relationship with the perpetrator often have a more difficult time disclosing abuse, and most children fail to disclose abuse immediately.

## DISCUSSION

I.  **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.  28 U.S.C. § 2254(a); 2241(d).  Accordingly the Court has jurisdiction over this action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after its enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

1   II.  **Standard of Review**

2       This Court may entertain a petition for writ of habeas corpus "in behalf of a person in
3   custody pursuant to the judgment of a state court only on the ground that he is in custody in
4   violation of the Constitution or laws or treaties of the United States." 28 U.S.C . § 2254(a).

5       The instant petition is reviewed under the provisions of the AEDPA. Lockyer v. Andrade,
6   538 U.S. 63, 70 (2003). Under the AEDPA, a petition for habeas corpus will not be granted unless
7   the adjudication in question "resulted in a decision that was contrary to, or involved an unreasonable
8   application of, clearly established Federal law, as determined by the Supreme Court of the United
9   States" or "resulted in a decision that was based on an unreasonable determination of the facts in
10  light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,
11  538 U.S. at 70-71; Williams, 529 U.S. at 413.

12      As a threshold matter, this Court must "first decide what constitutes 'clearly established
13  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
14  *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining "clearly established Federal law," the Court looks
15  to the "holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant
16  state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established
17  Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the
18  Supreme Court at the time the state court renders its decision." Id.

19      Finally, this Court must consider whether the state court's decision was "contrary to, or
20  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
21  *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant
22  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on
23  a question of law or if the state court decides a case differently than [the] Court has on a set of
24  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.
25  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state
26  court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
27  applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

28      This Court may not issue the writ simply because in its independent judgment the state court

decision applied clearly established federal law erroneously or incorrectly; for a writ to issue, 'that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, ninth circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. DuCharme, 200 F.3d 597, 600-01 (9th cir. 1999).

AEDPA requires that this court give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). Moreover, we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

III. **Review of Petitioner's Claims**

    A.    **Claim One:    Ineffective Assistance of Counsel**

In his first claim for relief, Petitioner asserts his trial counsel was ineffective for failing to object to the testimony of Elizabeth Scott, the victims' therapist, when Ms. Scott testified as to her belief that the victims had truthfully recounted to her what Petitioner had done to them. Petitioner claims that Ms. Scott's testimony improperly invaded the province of the trier of fact to determine issues of witness credibility, and that trial counsel's failure to object to the testimony amounted to a violation of his right to effective assistance of counsel under the Sixth and Fourteenth Amendment.

        1.    **Factual Background**

At trial, Elizabeth Scott testified regarding the statements made to her by victims L, K and A during therapy sessions. Her testimony was admitted pursuant to California Evidence Code section 1253. On cross-examination, defense counsel asked if it was Scott's job to assume that her patients were telling her the truth and not to judge their credibility. Scott answered affirmatively, but stated

1  that she was very careful about what she was hearing, knowing that there are malingerers. Defense
2  counsel asked if Scott probed for red flags in the stories of each client. Scott indicated that she did.
3       The following exchange occurred:
4       "Q. [Defense counsel] As I heard your testimony, it seemed that you wouldn't
   necessarily dig deeper and deeper because you were acutely aware of the girls'
5  feelings and their emotional state, is that also fair to say?
6  "A. [Scott] Actually when someone starts to tell me a story, I – I would if I felt that
   the story wasn't true by the information that they gave me ask them are you sure that
7  that's what happened or could you – you know, are you angry with this person, or
   generally people who talk about being molested and it's untrue, what we've seen
8  through all the studies are children who generally are unhappy with a parent. Most
   false molest reports are actually about stepparents. Keeping that in mind I would
9  also be very clear to see if this story wasn't colluded or something, and I did not feel
   that with these children at all.
10
   "Q. So none of the girls after you heard what they had to say caused you to ask
11 questions that further went to their credibility; you assumed – or you based your
   opinion after they told you the story that, hey, these kids are telling the truth?
12
   "A. I believe they were telling me the truth, yes."
13
14      Defense counsel then asked questions regarding a "parent checklist" that Y filled out at the
15 outset of counseling. The People objected and a sidebar conference was held. After the conference,
16 questioning continued:
17      "Q. [Defense Counsel] [I]f you look specifically at Item No. 10, the entry there is
   'tells lies or stories that aren't true'?
18
   "A. [Scott] Right.
19
   "Q. And [Y] circled that specifically as it regarded [K], correct?
20
   "A. Mm-hmm.
21
   "Q. And my question is, Miss Scott, at that point you knew that [K] had problems
22 with telling lies or stories that weren't true.
23 "A. Right.
24 "Q. And when she gave you her story, you testified that you didn't feel that you
   needed to go into it any further to determine any issues that may have sent up red
25 flags. And the question is wouldn't this No. 10 have caused you some sort of
   hesitation or threw up a red flag with regard to [K]'s story?
26
   "A. Yes, it would have. I knew in the context though of when she circled this what
27 she was talking about. And she wouldn't have circled if she'd thought that I wasn't
   gonna believe her daughter. What she was talking about is she will exaggerate or
28 tell things that aren't true about things that go on when she's playing or she won't

6

tell about things that go on in the house. It was not about what went on with the molest because her story continued to stay the same for two years. She never changed her story about that."

After Scott's testimony was completed, the court made a record of the unreported sidebar. The following exchange took place:

"MR. BROWN [district attorney]: Your Honor, I was – I was just concerned that on direct I was very careful not to ask any questions about diagnosis or anything like that and only stick with statements made by the children to the psychotherapist. When [defense counsel] asked the question from one of the application forms where [Y] had indicated that perhaps one of the children told lies, the witness pretty much took the ball and ran with that and expressed her opinion about the veracity of the children. I was concerned that that might raise an issue in the future that that was – certainly my objection was that that was beyond the scope and Mr. Garcia I think effectively took the witness as his own witness at that point and made the tactical decision to pursue that. I just wanted the record to reflect that if that's accurate from Mr. Garcia's standpoint.

"THE COURT: That was my understanding and I think Mr. Garcia had indicated in side-bar that it would be among other things a prior inconsistent statement of [Y].

"Is that correct, Mr. Garcia?

"MR. GARCIA: Yes.

"THE COURT: Okay. So with that on the record I believe that we're clear as to what the side-bar issue was and how Mr. Garcia chose to proceed."

### 2. Review by the State Courts

Petitioner's claim was first presented before the Fifth DCA, which rejected said claim in a reasoned opinion on July 15, 2004.

In rejecting Petitioner's claim, the Fifth DCA acknowledged that an expert is not allowed to testify as to the ultimate question of whether a witness has told the truth on a particular occasion. Fifth DCA Op. at 6, citing People v. Castro, 30 Cal.App.4th 390, 395-396 (1994). Nonetheless, the court found that trial counsel had made a tactical decision to question witness Scott regarding the credibility of L, K and A. The questioning was aimed at showing that Scott did not delve deeply into the details and credibility of the victims' stories despite 'red flags' that should have alerted her to credibility problems. The Fifth DCA found that this line of questioning was a valid tactic to try and undermine the credibility of the victims. Because it was a valid tactical decision, the Fifth DCA held that Petitioner failed to demonstrate that his trial counsel's performance was deficient.

### 3. Clearly Settled Supreme Court Law

7

1     The law governing ineffective assistance of counsel claims is clearly established for purposes
2 of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226,
3 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of
4 counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687 (1984);
5 Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's
6 performance was deficient, requiring a showing that counsel made errors so serious that he or she
7 was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at
8 687. The petitioner must show that counsel's representation fell below an objective standard of
9 reasonableness, and must identify counsel's alleged acts or omissions that were not the result of
10 reasonable professional judgment considering the circumstances. Id. at 688; United States v.
11 Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance
12 is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the
13 wide range of reasonable professional assistance. Strickland, 466 U.S. at 687 (1984); Sanders v.
14 Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). Under this first prong, Petitioner must demonstrate
15 both that trial counsel's performance was objectively unreasonable, but that trial counsel's actions
16 did not constitute sound trial strategy. Kimmelman v. Morrision, 477 U.S. 365, 381 (1986); Jones
17 v. Wood, 114 F.3d 1002, 1010-11 (9th Cir. 1997).

18     Second, the petitioner must demonstrate that "there is a reasonable probability that, but for
19 counsel's unprofessional errors, the result...would have been different." 466 U.S. at 694. Petitioner
20 must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose
21 result is reliable. Strickland, 466 U.S. at 688. The court must evaluate whether the entire trial was
22 fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78
23 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). Petitioner must
24 affirmatively prove prejudice.

25     **4.     Review of Petitioner's Claim**

26     The decision of the Fifth DCA is not an unreasonable application of clearly settled Supreme
27 Court law. As the Fifth DCA notes, defense counsel made a tactical decision to question witness
28 Scott regarding the credibility of the victims. Trial counsel's line of questioning was aimed at

demonstrating to the jury that Ms. Scott had cause to, but did not, question the victims' credibility. (LD 4 at 8). Petitioner argues that, even if trial counsel's initial line of questioning was proper, trial counsel should have objected to Ms. Scott's answers as non-responsive, to the extent she testified that she thought the girls were being truthful. However, Petitioner fails to demonstrate that trial counsel's failure to object was unreasonable. The record demonstrates that this line of questioning was part of trial counsel's strategy – trial counsel was attempting to make the point that witness Scott early on formed the opinion that the girls were being truthful, and did not take serious efforts to gauge their credibility despite the "red flags" raised by the parental questionnaire. Fifth DCA Op. at 8. Trial counsel in fact indicated on the record that the line of questioning regarding Scott's opinion as to the victims' veracity was part of his trial strategy. Id. at 6.

Petitioner fails to demonstrate that his trial counsel's performance was deficient within the meaning of the Sixth Amendment. The decision of the Fifth DCA is not an unreasonable application of settled law. Accordingly, Petitioner's claim should be denied.

### B.  Claim Two:  Jury Instructions on Evidence of Uncharged Offenses

In his second claim for relief, Petitioner contends the trial court misinstructed the jury as to how it should consider evidence of his (uncharged) sexual offenses against L, in violation of his right to a fair trial. Pet. At 5-5D.

#### 1.  Factual Background

Evidence of Petitioner's uncharged sexual offense against L was admitted by the trial court pursuant to both California Evidence Code section 1101(b) (evidence of intent) and California Evidence Code section 1108 (propensity evidence). At the close of trial, the jury was instructed pursuant to CALJIC No. 2.50 that it could consider the evidence of other crimes in proving defendant's intent.[1] Immediately following CALJIC No. 2.50, the jury was further instructed

---

[1] "Evidence has been introduced for the purpose of showing that the defendant committed a crime other than that for which he is on trial. This evidence if believed may not be considered by you to prove that the defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show the existence of the intent, which is a necessary element of the crime charged. For the limited purpose for which you may consider such evidence, you may weigh it in the same manner as you do all other evidence in the case. You are not permitted to consider such evidence for any other purpose."

pursuant to CALJIC No. 2.50.01 that it could consider this prior sexual offense evidence to infer that defendant had a predisposition to commit such crimes.[2]

## 2. State Court Review

Petitioner first brought his claim before the Fifth DCA. Petitioner argued that the instructions were confusing in that the jury was first told it could consider the evidence on the issue of intent, but not for any other purpose, particularly to infer a criminal disposition. However, the second instruction told the jury it could consider the evidence to infer disposition but unless instructed otherwise not for any other purpose.

Petitioner argued that the jury could only reasonably harmonize those instructions by disregarding the evidence with regard to disposition and only considering it as it bore on intent. He asserted that, because intent was not at issue in the case, the evidence should not have been admitted on that issue.

The Fifth DCA rejected Petitioner's claim. It found that, even under Petitioner's interpretation of CALJIC Nos. 2.50 and 2.50.01, the jury instructions did not deny Petitioner a fair trial. First, the Fifth DCA found that if the jury understood the instructions to mean that it was precluded from considering the prior sexual offense on the question of disposition under CALJIC No. 2.50.01, this could only have benefitted Petitioner. Next, the court found that Petitioner had failed to object at trial to the admission of the evidence as irrelevant on the issue of intent. Accordingly he could not raise such an issue on appeal. Even if the objection was preserved, however, the Fifth DCA found that the evidence was relevant on the issue of intent. The State bears the burden of proving all elements of the charged crimes beyond a reasonable doubt. This burden exists even if defendant does not challenge one or more of the elements. Because the prosecution

---

[2]Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than those charged in this case. Sexual offense means any conduct made criminal by Penal Code section 288 subdivision (a). The elements of this crime are set forth elsewhere in these instructions.
  "If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused. However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. The weight and significance of the evidence, if any, are for you to decide. Unless you are otherwise instructed, you must not consider this evidence for any other purpose."

bore the burden of proving the acts were committed with the requisite intent, a jury instruction allowing the jury to consider the prior offense on the question of intent was not erroneous.

### 3. Clearly Settled Supreme Court Law

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 72 (1991). Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982), *citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S.619, 637 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict); see also Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

### 4. Analysis of Petitioner's Claim

In this case, there is nothing in the record to support Petitioner's allegation. As noted by the Fifth DCA, the jury confusion alleged by Petitioner could only have benefitted him, as it would have limited the jury to considering the prior sexual offense evidence on the issue of intent rather than on both intent and disposition. Fifth DCA Op. at 12. Petitioner asserts that the evidence was irrelevant on the issue of intent, since he did not dispute intent but rather completely denied the allegations. Pet. at 5C. But the fact that Petitioner did not overtly contest the issue of intent did not render evidence of the requisite intent irrelevant. As a general rule, "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." Old Chief v. United States, 519 U.S. 172, 186-87 (1997); see also Estelle v. McGuire, 502 U.S. 62, 69-70 (1991) (prosecution's burden to prove every element of the charged offense is not relieved by a defendant's tactical decision not to contest an element).

California Penal Code section 288(a) requires the prosecution to demonstrate that a

defendant have "the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desire of that person or the child." The evidence of Petitioner's uncharged offense against L was relevant on the issue of intent with respect to the acts committed against K and A. Thus, even if the jury understood the instructions to permit consideration of the evidence only on the issue of intent, the result cannot be considered a denial of Due Process or a fair trial, as there is no reasonable possibility that the jury applied the challenged instructions in a way that violated the Constitution. Estelle, 502 U.S. at 72; Allen v. Woodford, 366 F.3d 823, 840 (9th Cir. 2004).

The determination of the Fifth DCA is not contrary to, nor an unreasonable application of Supreme Court precedent. Accordingly, Petitioner's claim should be denied.

### C. Claim Three: Sentencing in Violation of Right to Jury Trial

In his third claim for relief, Petitioner contends the trial court's imposition of consecutive sentences violated his right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution. Petition at 6.

#### 1. Factual Background

Petitioner was charged with two counts of lewd and lascivious acts upon a child under the age of fourteen (Cal. Pen. Code §288(a)); one act against his step-granddaughter K, and one act against his granddaughter A. It was further alleged in association with each count that Petitioner had suffered three prior serious or violent felony convictions within the meaning of California's three strikes law, Cal. Pen. Code §§ 667(b)-(I), 1170.12. (CT 94-96).

The jury found Petitioner guilty of both counts of lewd and lascivious acts. (CT 191-94, 219-20). Petitioner then waived his right to a jury trial on the prior conviction allegations. A court trial was held on the allegations, which were found to be true. (CT 191-92, 221).

Petitioner was sentenced by the court on January 14, 2002 in accordance with California's three strikes law to twenty-five years to life on count I, plus a consecutive term of twenty-five years to life on count II, for a total term of fifty years to life in prison. (CT 360, 374-75, 395-96). The court explained its decision to sentence consecutively as follows:

> [I]n this case I think that due to the fact that the separate incidents charged here as well as the uncharged incidents really were very independent of each other, involved separate victims, the objectives were independent of each other, and the fact again of

the defendant's lengthy prior history, and the fact that he has served prior prison terms on several occasions leads the court to believe that the sentences in this case for the offenses that were committed should run consecutively. (CT 395).

### 2. State Court Review

The California Supreme Court declined to address Petitioner's Sixth Amendment claim. Therefore this court reviews the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

### 3. Analysis of Petitioner's Claim

Petitioner asserts that, in light of the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004) "it was for the jury, and not the judge, to decide whether the two offenses were committed separately or with separate intents and objectives." Pet. at 6B. As a result, Petitioner contends the court violated his Sixth Amendment right to a jury trial when it imposed consecutive sentences. Id.

In Blakely, the United States Supreme Court applied the following rule set forth earlier in Apprendi v. New Jersey, 530 U.S. 466 (2000): "'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" Blakely, 542 U.S. at 301, *quoting* Apprendi, 530 U.S. at 490. The Blakely Court held that the trial court violated a defendant's Sixth Amendment jury trial right when it sentenced him to an "exceptional sentence" which was thirty-seven months longer than the crime's "standard range" under Washington state law. Id.[3] The Blakely Court found that the standard sentencing range was the statutory maximum for purposes of the Apprendi rule, since that range was "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" Id. at 303 (emphasis in original). Since no jury had found beyond a reasonable doubt the fact of "deliberate cruelty" relied upon by the judge to enhance the defendant's sentence, the Court concluded that the defendant had been denied his right to a jury trial. Id.

This Court declines to extend the holdings in Apprendi and Blakely to the determination to

---

[3]The trial court in Blakely found that defendant had acted with deliberate cruelty, a statutorily enumerated ground for imposing a sentence in excess of the standard range.

13

sentence consecutively rather than concurrently. By their terms, Apprendi and Blakely are concerned with findings of fact "that increase[] the penalty for a crime beyond the prescribed statutory maximum." Blakely, 542 U.S. at 301; see also Apprendi, 530 U.S. at 490. At issue in both cases is the sentence for a single crime, not the aggregate effect of a defendant's sentences for multiple offenses. Apprendi, 530 U.S. at 474; Blakely 542 U.S. at 299, n.2 (finding defendant's additional sentence on a separate count "not relevant" to the discussion). In neither case did the Court rule as to whether a defendant should serve individual sentences concurrently or consecutively.

Even if Blakely were applicable to sentencing for multiple offenses, Petitioner would still not be entitled to relief. Blakely requires jury determination of all facts necessary to support sentencing beyond the statutory maximum. When, as here, a defendant is sentenced to an indeterminate term, the statutory maximum is life in prison. Additional consecutive sentences serve only to increase the statutory *minimum* sentence, which the Supreme Court has held does not implicate the Sixth Amendment. See McMillan v. Pennsylvania, 477 U.S. 79, 82 (1986); see also Blakely, 542 U.S. at 304 (distinguishing McMillan); Apprendi, 530 U.S. at 487 n.13 (reaffirming and distinguishing McMillan).

Finally, even if Blakely and Apprendi are applicable to consecutive sentencing, Petitioner is not entitled to relief because he was sentenced in part based on the trial court's findings as to his "lengthy prior history, and the fact that he has served prior prison terms on several occasions." (CT 395). The Apprendi Court expressly excepts prior conviction as a fact which need not be submitted to a jury before use in sentence enhancement. Apprendi, 530 U.S. at 490; see also Almendarez-Torres v. United States, 523 U.S. 224 (1998) (no right to a jury trial for a sentence enhancement based on the fact of prior conviction). The judicial findings of recidivism satisfy Blakely and support consecutive sentencing.

The trial court's decision to sentence Petitioner to consecutive sentences comported with the jury trial requirements of the Sixth Amendment. Accordingly, Petitioner's claim should be denied.

**RECOMMENDATION**

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas

14

1  corpus be DENIED and the Clerk of the Court be DIRECTED to enter judgment.

2        These Findings and Recommendations are submitted to the Honorable Anthony W. Ishi,

3  United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)

4  and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District

5  of California.

6        Within thirty (30) days after being served with a copy, any party may file written objections

7  with the court and serve a copy on all parties.  Such a document should be captioned "Objections to

8  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and

9  filed within ten (10) court days (plus three days if served by mail) after service of the objections.

10  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)©.  The

11  parties are advised that failure to file objections within the specified time may waive the right to

12  appeal the District Court's order.  Martinez v. Y1st, 951 F.2d 1153 (9th Cir. 1991).

14  IT IS SO ORDERED.

15  **Dated:   October 31, 2007**               **/s/ John M. Dixon**
                                                        UNITED STATES MAGISTRATE JUDGE